IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHARLES DEWAYNE MILLER, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-05-470-C-MHW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus action is Respondent's Motion to

Dismiss (Docket No. 10), based on statute of limitation grounds.  The Clerk of Court sent

Petitioner the Notice to Pro Se Litigants of the Summary Judgment Rule Requirements

(Docket No. 12).  Petitioner has filed a Response (Docket No. 13), as well as an Amended

Petition to reflect a proper respondent (Docket No. 14).  Both parties have consented to

the jurisdiction of a United States Magistrate Judge to enter final orders in this case

(Docket Nos. 6 & 8).  Having reviewed the written arguments of the parties, the Court

MEMORANDUM ORDER  1

finds that oral argument is unnecessary.  Accordingly, based upon the record in this case, the Court enters the following Order.

## I.

## PROCEDURAL ISSUES

### A.    Standard of Law

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  In such case, the Court construes the facts in a light most favorable to the petitioner.  When a court is considering a motion to dismiss, it may take judicial notice of facts outside the pleadings.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281 (9th Cir. 1986).[1]  A court may look beyond the complaint to matters of public record, and doing so does not convert a motion for summary dismissal into a motion for summary judgment.  *Id.*   Accordingly, the Court shall take judicial notice of those portions of the state court record lodged by Respondent.

The Petition in this case is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), enacted in 1996.  Under AEDPA, petitioners have a one-year statute of limitations period within which to file a federal habeas corpus petition.  The one-year period usually begins to run from the date the state court judgment

---

[1]*abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166 (1991).

MEMORANDUM ORDER  2

"became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[2]

The statute provides tolling (stopping) of the one-year period for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Thus, to the extent that a petitioner properly filed an application for post-conviction relief in state court, or other collateral review, the time that the application was pending in state court will not count toward the one-year limitations period.

If, after applying statutory tolling, a petitioner's petition is deemed untimely, a federal court can hear the claims only if the petitioner can establish that "equitable tolling" should be applied to toll the remaining time period.  In *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807 (2005), the Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."  *Id*., 125 S.Ct. at 1814.  In order to qualify for equitable tolling a circumstance must have *caused* Petitioner to be unable to file his federal Petition in time.  *See Allen v. Lewis,* 255 F.3d 798, 800 (9th Cir. 2001) (per curiam) (requiring petitioner to show that

---

[2]  If a direct appeal was filed, the one-year statute of limitation begins to run on the expiration of the 90-day period "within which [a petitioner] could have filed a petition for a writ of certiorari from the United States Supreme Court" following direct appeal, whether or not one was filed.  *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

MEMORANDUM ORDER  3

"extraordinary circumstances" were the "but-for and proximate cause of his untimeliness").

**B.     Discussion**

Petitioner was convicted of felony eluding in February 1996.  Petitioner filed a direct appeal, which was heard by the Idaho Court of Appeals.  That court affirmed the conviction, and the Idaho Supreme Court denied Petitioner's Petition for Review on May 29, 1998.  The Remittitur was issued the same day.  *See State's Exhibits B-1 through B-8.* As a result, Petitioner's federal habeas corpus statute of limitations began running on August 28, 1998, ninety days after the Idaho Supreme Court's opinion and Remittitur were issued.

Petitioner's federal statute of limitations ran from August 28, 1998, until May 11, 1999, when Petitioner filed his first state post-conviction relief action.  At that point in time, his statute was tolled, with 257 days used, and 108 days left.

Petitioner's first state post-conviction action was denied, and the appeal was heard by the Idaho Court of Appeals.  That court affirmed the denial of the post-conviction action, and because Petitioner failed to file a petition for review, the Court of Appeals issued a remittitur on March 7, 2001.  Petitioner's federal statute began running again at that point, and expired on June 22, 2001, after the remaining 108 days had passed.[3]

---

[3]  Petitioner's prior federal habeas corpus action, *Miller v. Klauser*, CV98-289-S-EJL, filed on July 14, 1998, and dismissed on October 22, 1999, did not toll the statute.  *See Duncan v. Walker*, 533 U.S. 167, 181 (2001) (a properly filed *federal* habeas petition does not toll the limitation period because the statute specifies only that *state* actions toll the statute).

In addition, over two years after the first post-conviction decision became final, on May

Petitioner's federal Petition for Writ of Habeas Corpus was filed on November 18, 2005, over four years too late.

Because Petitioner's federal Habeas Corpus Petition was filed too late, the Court cannot grant relief on the Petition (if relief were warranted by the merits) absent a showing that equitable tolling should be applied. Petitioner's equitable tolling argument centers on his post-conviction counsel's failure to inform him when the first post-conviction appeal had concluded. Petitioner states that he relied on correspondence from the Idaho Appellate Public Defender's Office, dated April 6, 2000, which lulled him into inaction:

> As you can see, this is a lengthy process. Please be aware that there will be times when it seems that nothing is happening in your case. In fact, there will be times when nothing is happening in your case. If we are just waiting for a deadline to pass or waiting for the Court to issue an opinion, there is nothing we can do to speed the process up or get any more information for you. Please do not think that we are ignoring your case.

*State's Exhibit E-1*, at p. 23.

Relying on this letter, Petitioner did nothing from the time the post-conviction appellate briefing was filed until February 13, 2003, when he wrote a letter to Mary Kay Patton, his public defender, to check on the status of the case. *Id*. at p. 24. On April 2, 2003, Petitioner was informed by the Public Defender's Office that Patton was no longer employed at the office and that his case had been resolved by the Idaho Court of Appeals

---

19, 2003, Petitioner filed a second post-conviction action. That action was too late to toll the federal statute. *Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

MEMORANDUM ORDER  5

on March 7, 2001.  *State's Exhibit E-1*, at p. 24.  By that time, it was too late to file a

petition for review with the Idaho Supreme Court, rendering his claims procedurally

defaulted for federal habeas corpus purposes.

The Ninth Circuit has held that attorney negligence is not a basis for equitable

tolling.  *Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001).  However, sufficiently

egregious attorney misconduct may be grounds for equitable tolling.  *Spitsyn v. Moore*,

345 F.3d 796 (9th Cir. 2003).  To establish entitlement to equitable tolling, a litigant bears

the burden of proving  (1) "that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 125 S.Ct. at

1814.

It appears that Petitioner can likely meet these standards for the majority of the

time period between March 7, 2001, and October 20, 2005, when his second post-

conviction action (attempting to remedy the default in the first post-conviction action)

was completed.  He was mindful of the federal exhaustion principle, and he waited

patiently for his counsel to send him a copy of the Court of Appeals opinion because his

counsel had expressly told him that it was a very long process, that there would be

periods of time in which nothing was happening on his case, and that he should not

surmise that counsel was simply ignoring his case.  In light of what he had been advised

by counsel, Petitioner may have acted diligently.  Petitioner's counsel's actions were

arguably sufficiently egregious to meet the "extraordinary circumstances" exception

because counsel's (or the public defender's office's) failure to give Petitioner notice of

MEMORANDUM ORDER  6

the Court of Appeals opinion in a timely manner was compounded by the prior letter, which, in essence, advised Petitioner *not* to follow up with the Public Defender's Office.

Finally, it was the failure to exhaust that led Petitioner to file his second post-conviction action, hoping to be able to exhaust his claims via another avenue. Had Petitioner's counsel advised him of the Court of Appeals' opinion, he would have filed a petition for review and then proceeded to federal court in a timely manner.

Equitable tolling is not warranted for the entire time period, however. There is no factual circumstance showing that equitable tolling would be appropriate for (1) the time period between the direct review and the first post-conviction action, which was 257 days; (2) the time period between the date Petitioner learned that his first post-conviction action had been completed (April 2, 2003) and the filing of his second post-conviction action (May 19, 2003), which was 47days; or (3) the time period between the completion of his second post-conviction action (October 20, 2005), and the filing of his federal Petition on November 18, 2005, a period of 29 days. Adding these time periods together, Petitioner used a total of 333 days, which means that Petitioner still had 32 days of the limitations period left when he filed his federal Petition, rendering it timely.

Based on all of the foregoing, the Court concludes that it is likely that Petitioner can show the actions of his counsel caused him to miss his federal statute, that the actions were sufficiently egregious to warrant equitable tolling, and that equitable tolling would render his Petition timely.

MEMORANDUM ORDER  7

Respondent also argues that some of Petitioner's claims were not cognizable or procedurally defaulted.  As a result, Petitioner has amended his Petition to omit several claims.  The two remaining claims in Petitioner's Amended Petition were fully exhausted in Petitioner's direct appeal.  However, even if the Court were to conclude that Petitioner is entitled to equitable tolling as explained above, his claims are subject to dismissal on the merits.

## II.

### DISCUSSION OF MERITS OF PETITIONER'S CLAIMS

**A.    Introduction and Standard of Law**

In his Amended Petition, Petitioner brings two claims: (1) that the state district court violated Petitioner's due process and equal protection rights by requiring him to wear leg shackles at trial; and (2) that the state district court violated Petitioner's due process and equal protection rights by not requiring the prosecution to rebut Petitioner's testimony at sentencing that the Washington courts failed to advise him of his rights before he pled guilty to the prior felonies.

In order to obtain federal habeas corpus relief from a state court judgment, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

MEMORANDUM ORDER  8

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 385 (2000), the United States Supreme Court explained that, to prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*).   Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled," *Ramdass v. Angelone*, 530 U.S. at 166 (citing *Williams v. Taylor*); however, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

**B.    Discussion of Petitioner's Two Claims**

    1.    <u>Use of Leg Shackle on Petitioner/Defendant During Jury Trial</u>

The United States Supreme Court has recently reiterated that "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck v. Missouri*,

MEMORANDUM ORDER  9

544 U.S. 622, –, 125 S.Ct. 2007, 2010 (2005).  Despite the risk of jury prejudice and other possible difficulties to the defendant, the Supreme Court has determined that "[t]here will be cases, of course, where these perils of shackling are unavoidable." *Id.* at 2014.  "We do not underestimate the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations." *Id.*  In other words, "given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." *Id.*  Similarly, in *Ghent v. Woodford*, 279 F.3d 1121 (9th Cir. 2002), the Ninth Circuit determined that there was no constitutional error where jurors briefly saw the defendant in restraints outside the courtroom and where there was no showing of actual prejudice.  *See also Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2002) (same).

The precise question in this case is whether the Idaho Court of Appeals' decision was contrary to or an unreasonable application of federal law as established by the United States Supreme Court at the time it issued its decision on December 22, 1997.  As the United States Supreme Court noted in *Deck*, the law governing shackling has long been established.  In Petitioner's case, the Idaho Court of Appeals noted that "[t]he United States Supreme Court has upheld the practice of using shackles as a means of controlling a disruptive defendant, even though the sight of shackles and gags could have a significant effect on the jury's response to the defendant," citing *Illinois v. Allen*, 397 U.S. 337 (1970).  *State's Exhibit B-4*, at p. 5.

MEMORANDUM ORDER  10

Upon this law, the Idaho Court of Appeals determined:

> It is axiomatic . . . that in order for the defendant to assert that he or she was prejudiced by the restraints, there must be some evidence that the jury saw the restraints and thereby drew a conclusion regarding the defendant's character. In Miller's case, the district court found that the jury could not see the leg restraints, stating: "First, the device used in [Miller's] case was not visible. [The locking leg restraints were] worn under Mr. Miller's street clothing. And this Court has been presented with no evidence that other persons saw that device." The record presented supports the district court's determination. Therefore, because the jury did not see the locking leg restraints, Miller was not prejudiced by the presence of the restraints.

*State's Exhibit B-4*, at pp. 5-6.

This Court finds nothing in the record supporting Petitioner's position that the jurors actually saw the leg shackle. Petitioner speculates that jurors could have seen the restraints while he was sitting down and the legs of his pants were not fully covering the restraint. However, he offered no evidence to the state courts supporting his speculation (and has not and may not offer such evidence on federal habeas review). In addition, the trial judge noted that she requested that the Sheriff shackle Petitioner because she perceived a risk existed that Petitioner might have done violence to others or escaped, based on the court's recent observation of Petitioner's demeanor, his past crimes (including murder and escape), and because the courtroom was not very secure. *See State's Exhibit A-3*, at 249-263, 267-280.

Based upon the foregoing facts, the Court concludes that the state court decisions determining that Petitioner's due process and equal protection rights were not violated by the leg shackling during trial are not contrary to, or unreasonable applications of, federal

law as established by the United States Supreme Court.  Habeas relief on this claim is

unwarranted.

       2.    <u>Persistent Violator Claims - Due Process and Equal Protection</u>

Petitioner's second claim in his Amended Petition pertains to the prior convictions

used to find him a persistent violator.  Petitioner asserts that the prior convictions were

constitutionally defective and should not have been used.  He particularly alleges that the

Idaho district court violated his due process and equal protection rights by not requiring

the prosecution to rebut Petitioner's testimony at sentencing that the Washington courts

failed to advise him of his rights before he pled guilty to the prior felonies.

At the sentencing hearing, Petitioner testified that, prior to his Washington guilty

pleas, the court did not advise him of the rights he would be giving up as a result of

pleading guilty.  *State's Exhibit A-3*, at pp. 202-209.  Addressing this argument on direct

appeal, the Idaho Court of Appeals concluded:

> Miller admitted at trial that he was represented by counsel in each of the prior felonies from Washington, which he claims were constitutionally defective.  On the Washington judgments of conviction, counsel for Miller signed the documents, below the signature of the judge, thereby approving the form and content of the judgments.  Although Miller was represented by an attorney, was present in open court and his attorney approved of the form of the judgments, Miller claims now that he was not apprised of his rights and the consequences of entering a guilty plea.  Taking these facts into consideration, the district court found Miller's testimony was not credible and admitted the judgments into evidence.  Without further guidance from our Supreme Court as to what circumstances shift the burden from the defendant back to the state, we accept the district court's finding in this case as supported by the evidence presented to it.  Therefore, we conclude that the state did not need to rebut Miller's testimony.  The state only had to produce prima facie evidence that Miller was convicted of the prior felonies

MEMORANDUM ORDER  12

> – which the state produced in the form of the judgments of conviction.  The
> district court did not err in admitting the prior convictions, and Miler's
> constitutional rights were not violated.

*State's Exhibit B-4*, at p. 9.

The law available at the time the Idaho Court of Appeals made its decision does not support Petitioner's position.  The United States Supreme Court has established that "States have a valid interest in deterring and segregating habitual criminals."  *Parke v. Raley,* 506 U.S. 20, 27 (1992).  In *Oyler v. Boles,* 368 U.S. 448, 451 (1962), the Supreme Court stated that "the constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge."

In *In re Winship*, 397 U.S. 358 (1970), the United States Supreme Court held that due process requires proof of each element of a criminal offense beyond a reasonable doubt.  The due process protections of *Winship* have not been extended to proof of prior convictions used to support recidivist enhancements.  *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *Dretke v. Haley*, 541 U.S. 386 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)).

The foregoing cases, especially focusing on those rendered prior to the decision of the Idaho Court of Appeals, do not support Petitioner's position that the prosecution was constitutionally required to rebut his testimony that he was not advised of his rights by the Washington courts before pleading guilty to his prior felonies.  The Idaho court's decision

MEMORANDUM ORDER  13

that the trial court properly heard Petitioner's testimony and rejected it for lack of credibility in light of the judgments that contained counsels' signatures, is not contrary to, or an unreasonable application of, federal law as established by the United States Supreme Court.  As a result, Petitioner is not entitled to habeas corpus relief on his claim.

**C.   Conclusion**

The Court concludes that Petitioner may be entitled to equitable tolling for having missed the statute of limitations; however, it also concludes that he is not entitled to relief on the merits of the claims presented in his Amended Petition.  As a result, Petitioner's Petition is subject to denial on the merits and dismissal with prejudice.

**III.**

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion to Dismiss (Docket No. 10) is GRANTED.  Petitioner's Petition is denied and dismissed with prejudice.



DATED:  **May 17, 2006**

_____
Honorable Mikel H. Williams
United States Magistrate Judge

MEMORANDUM ORDER  14